BLAU v. OGSBURY et al.
No. 117, Docket 22855.

United States Court of Appeals
Second Circuit.

Argued Jan. 4, 1954.

Decided Feb. 10, 1954.

Morris J. Levy, New York City, for plaintiff-appellant.

Harman Hawkins, New York City (Duer, Strong & Whitehead, New York City, on the brief), for defendant-appellee Florence N. Ogsbury.

Before CHASE, Chief Judge, CLARK, Circuit Judge, and GIBSON, District Judge.

CLARK, Circuit Judge.

This appeal arises from a defendants' judgment in an action by Isadore Blau, stockholder, to recover alleged insider short-swing profits under § 16(b) of the Securities Exchange Act of 1934, 15 U. S.C.A. § 78p(b), realized from purchase and sale of securities of the nominal defendant, Fairchild Camera and Instrument Corp., by James S. Ogsbury, deceased. Ogsbury at all times material was an officer and director of Fairchild. Under an agreement dated August 19, 1941, lasting until December 31, 1945, Ogsbury was made chief executive of the company, and as part of his compensation was given an unassignable option to purchase 10,000 shares of the company's stock at $4.50 per share, valid until the terminal date of the agreement or one year from the date of his death, whichever first occurred. Originally the option was to be exercised by mailing of notice to the company, the date of mailing to be the effective date for the transfer of title; but on August 7, 1945, the parties amended the agreement to provide for postponement of payment at Ogsbury's election, until termination of employment or six months from his death. Under the new provisions, title and stockholder rights remained in the company pending payment, though the agreement clearly specified that mailing of the notice of election would obligate Ogsbury for the purchase price.

On December 29, 1945, Ogsbury mailed to Fairchild notice of his election to purchase 10,000 shares under the option. Thereafter he postponed payment until on December 8, 1948, he tendered $45,000 and on December 13, 1948, duly received the stock. Prior to this final transaction, on July 19 and 20, 1948, he had sold 600 shares of identical stock for an average price of $27.875 per share. On these facts Blau brought action against Ogsbury's executrix and the corporation; and in the action he moved for summary judgment claiming a profit of $11,000 for the corporation's benefit on the purchase and sale of 600 shares. In a reasoned opinion Judge Bondy denied this motion and instead granted the defendants' motion for summary judgment.

Plaintiff contends that the 1948 payment for the stock was a "purchase" within § 16(b); and since it followed the July sale by less than six months, he finds a violation. We do not agree. Instead we agree with Judge Bondy that the "purchase" was consummated in 1945 when Ogsbury mailed his notice of election and thereby incurred an irrevocable liability to take and pay for the stock. Thereafter for all speculative purposes he owned the stock.

Section 3(a)(13) of the Act, 15 U.S. C.A. § 78c(a)(13), provides: "The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." In Park & Tilford v. Schulte, 2 Cir., 160 F.2d 984, we held that the exercise of an option to acquire securities was a "purchase" within this section and § 16(b). In Falco v. Donner Foundation, Inc., 2 Cir., 208 F.2d 600, we affirmed this view and expressly stated that the time when the alleged insider's rights and obligations became fixed was controlling in the application of the statute. See also 59 Yale L.J. 510, 520; 65 Harv.L.Rev. 997.

In the face of these authorities plaintiff's argument remains unclear. He clings doggedly to the fact that payment and passage of title constituted execution of the contract, and that the inclu-sion of executory transactions does not import the exclusion of executed ones. Certainly this is so, but it does not blunt the statutory mandate or our prior holdings where a choice between executory and executed dates is required. Nor can it justify finding two "purchases" where in fact but one exists.

The reasoning behind our earlier rulings is sound. It matters not to the speculator who has title or possession or who can vote the stock or receive dividends. What he needs is firm assurance that a fixed quantity can be acquired or disposed of at a fixed price; and his commitments are on that basis. And speculation, actual or potential, is the only vice within the purview of § 16(b). Other possible abuses of stock options do not now concern us.

Since the only "purchase" before us took place in 1945, and no sale ensued until 1948, there has been no short-swing transaction within the statutory prohibition. Hence whatever the profits, they are not recoverable for the corporation under this statute.

Affirmed.