Bertha **SILVERMAN**, Plaintiff-Appellant,

v.

Alfons **LANDA**, Defendant-Appellee,

and

Fruehauf Trailer Company, Defendant.

No. 298, Docket 27353.

United States Court of Appeals
Second Circuit.

Argued April 3, 1962.

Decided Aug. 17, 1962.

Sidney B. Silverman, New York City (Rosenfeld & Silverman, New York City, on the brief), for plaintiff-appellant.

Marvin F. Hartung, New York City (Conboy, Hewitt, O'Brien & Boardman, Eugene J. T. Flanagan, and Donald Fried, New York City, on the brief), for defendant-appellee.

Peter A. Dammann, Gen. Counsel, Walter P. North, Associate Gen. Counsel, and George P. Michaely, Jr., Sp. Counsel, for Securities and Exchange Commission, as amicus curiae.

Before CLARK, HINCKS and FRIENDLY, Circuit Judges.

HINCKS, Circuit Judge.

Silverman, a stockholder of Fruehauf Trailer Company, sued Landa, a director of the corporation, for profits realized from his simultaneous writing of puts and calls on Fruehauf stock. Landa, the beneficial owner of 2,000 Fruehauf shares, issued the following options.

1. "Calls" on 1,000 shares at 24⅜ per share (the then market price), for which he received a premium of $4,000.

2. "Puts" on 500 shares, also at 24⅜, for which the premium he received was $1,000.

The calls were irrevocable options to buy, under which the optionee could call on Landa to assign 1,000 shares upon demand at any time within the next year and tender of the option price of 24⅜. The puts were the converse; the optionee, any time within the next year, upon tender of 500 shares could demand payment of the option price.

Silverman brought this derivative action to recover, for the corporation, Landa's profit on these transactions, claiming that the "straddle" (i. e., the matched sale of puts and calls on 500 shares), was a sale and purchase of Fruehauf stock prohibited by § 16(b)[1] of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78p(b), and that the remaining 500-share call was a short sale prohibited by § 16(c).[2] Alternatively, it was claimed

[1]. "(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

[2]. "(c) It shall be unlawful for any such beneficial owner, director, or officer, di-

that the calls for 1,000 shares were short sales and subject to § 16(c). On cross-motions for summary judgment on facts admitted by Landa's affidavits and stipulated, Judge Murphy held that the options did not constitute a purchase and sale within the purview of § 16(b) or sales prohibited by § 16(c) and dismissed the complaint. 200 F.Supp. 193 (S.D. N.Y.1961).

Plaintiff relies first on § 3(a) (13) and (14), 15 U.S.C.A. § 78c(a) (13) and (14), which define "purchase" and "sale" to include contracts to buy and to sell. This court has held that when fixing the six-months' period, "the time when the alleged insider's rights and obligations became fixed [is] controlling in the application of the statute," Blau v. Ogsbury, 210 F.2d 426, 427 (2d Cir. 1954); Falco v. Donner Foundation, Inc., 208 F.2d 600, 40 A.L.R.2d 1340 (2d Cir. 1953). Since Landa became irrevocably bound for the next year to buy and sell at the optionee's pleasure, at the time he issued the options, plaintiff claims that a "sale and purchase" then occurred.

■ Plaintiff misconceives the nature of an option. By its nature, the option is one-sided; it fixes the obligations, but not the rights, of the issuer. Landa cannot be said to have "sold" or "purchased" Fruehauf stock; should the options lapse unexercised (and in fact the call options did so lapse), no change in his beneficial ownership of the underlying security would occur. And, most importantly, any change would occur at the pleasure of the optionee. Only if both the options had been exercised within their first six months would there have been a "sale and purchase" of the underlying security within the reach of § 16(b). And if, under the sweeping definition of the Act,[3] each option (as distinguished from the stock covered by the option) itself is viewed as an "equity security," as the plaintiff contends, he still has no case. For the call was never exercised and the put was exercised not until after the six months' period. Thus there was no sale and purchase of either option within the statutory period. Moreover, Landa who subsequent to the six months' period had paid a brokerage firm to assume his obligation under the put, derived no profit from his dealings with respect to the put.[4]

rectly or indirectly, to sell any equity security of such issuer (other than an exempted security), if the person selling the security or his principal (1) does not own the security sold, or (2) if owning the security, does not deliver it against such sale within twenty days thereafter, or does not within five days after such sale deposit it in the mails or other usual channels of transportation; but no person shall be deemed to have violated this subsection if he proves that notwithstanding the exercise of good faith he was unable to make such delivery or deposit within such time, or that to do so would cause undue inconvenience or expense."

3. See § 3(a) (11) of the Act ("any stock or similar security; any security convertible * * * into such a security, or carrying any warrant or right to subscribe to or purchase such a security; or any such warrant or right * * * "); Comment, 69 Yale L.J. 868, 872–73 (1960); see also Uniform Commercial Code § 8–102 (Proposed Final Draft 1950) (security an "instrument which is issued in bearer or registered form * *

of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment").

4. The Securities and Exchange Commission filed briefs, both here and in the district court, supporting plaintiff's view that the options were a "purchase" and "sale" of the underlying security, relying on Blau v. Ogsbury, supra. But here, we think, they err. In Blau, the insider bought under an option, prior to sale of other shares of the underlying security. The question was whether the sale and purchase were within the six-months' period, it being admitted that purchase of the underlying security under an option was indistinguishable from open-market purchase. But there the insider was the *optionee;* his exercise of the option fixed his position *as to* the underlying security, thus acting as a "purchase." And here, as we have pointed out, the insider-*optionor's* position in the underlying security is not fixed when he sells the *option,* but when the option is exercised and the underlying

The plaintiff argues that this type of transaction offers such possibilities for abuse of inside information, and such temptation to manipulation, that it is clearly within the policy of the Act and should therefore be penalized. Abuse of information is assumed in that if Landa knew that dividends and earnings would remain stable for a year he could write a straddle for a year with confidence that neither option would be exercised. But even this position depends on the wholly untenable assumption that earnings and dividends are the sole factors which control market prices—a proposition contrary to the statute itself, which assumes that, after six months, the likelihood of profits from inside information is too remote to warrant continued restriction in the free play of market transactions.

These underlying assumptions in which the plaintiff indulges seem to us remote, at best. But it is true that "[t]he statute is broadly remedial * * * intended * * * to squeeze all possible profits" out of abuses, "and thus to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary officer, director, or stockholder and the faithful performance of his duty," Smolowe v. Delendo Corp., 136 F.2d 231, 239, 148 A.L.R. 300 (2d Cir. 1943), cert. denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). Notwithstanding, of course the statute did not intend to penalize *every* speculative transaction; otherwise it would not have categorically limited its impact to purchases and sales occurring within six months. Merely because the options may have been entered into for a speculative purpose, it does not follow that they constitute purchases

and sales of the type which were penalized.

The plaintiff claims further that the straddle which Landa issued was an arbitrage brought within the purview of § 16(b) by Rule 16d–1 of the General Rules and Regulations of the Securities and Exchange Commission. Our holding that the options did not constitute a purchase and sale under § 16(b) of course disposes of this claim also.

Alternately, plaintiff contends that the sale of call options is a short sale or a "sale against the box" within the meaning of § 16(c).[5] Apparently, the plaintiff argues that a call-option presents the same dangers of insider manipulation as sales short or against the box. Here again our holding that a call-option is not a sale of the underlying security demolishes the plaintiff's contention. But that apart, a call-option does not violate § 16(c). For it falls within the proviso that "no person shall be deemed to have violated this subsection if he proves that notwithstanding the exercise of good faith he was unable to make such delivery within [twenty days]"; obviously one who issues a call-option cannot deliver the underlying security until called on to do so. And plaintiff's asserted dangers seem unreal when we bear in mind that the Commission, under § 9 (b), has complete power to ban or regulate all trading in options—a power it has not yet felt compelled to use.

Thus our holding as already indicated makes it unnecessary for us to consider the defendant's contention that § 16(c) of the Act, in that it makes no express provision for a civil recovery in favor of the corporate defendant, precludes recovery.

Affirmed.

---

security changes hands. As to purchase and sale of the option itself, see text at note 3 supra.

**5.** The Commission, we note, takes a position opposed to this contention, as well as to the claim of arbitrage.