**VARIAN ASSOCIATES, Plaintiff,**

v.

**Harold C. BOOTH, Henry J. McCarthy, Defendants.**

**Civ. A. No. 63–260–F.**

United States District Court
D. Massachusetts.

Dec. 4, 1963.

Frank W. Crocker, of Ropes & Gray, Boston, Mass., for plaintiff.

Louis Loss, Cambridge, Mass., C. Henry Glovsky, Beverly, Mass., for defendants.

FRANCIS J. W. FORD, District Judge.

This is an action under § 16 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b) to recover alleged "insider profits" made by defendants on the sale of certain shares of stock of plaintiff corporation. There is no dispute as to the relevant facts and both sides have moved for summary judgment.

In January, 1959 plaintiff acquired 80% of the outstanding shares of Bomac Laboratories, Inc. Most of these shares were acquired from defendants, who were left as owners of the remaining 20% of the Bomac stock. Shortly thereafter defendants became, and still are, members of the board of directors of plaintiff.

On January 14, 1959 plaintiff and defendants entered into a contract, amended on February 26, 1959, under which defendants agreed to sell to plaintiff their remaining shares of Bomac stock in return for that number of shares of plaintiff corporation which, on the basis of the market quotations of the day before the closing, would equal in value $2,000,000 plus 10 per cent of the amount by which the retained earnings of Bomac at the end of the month preceding the closing exceeded the retained earnings on December 31, 1958. The closing date was to be July 2, 1962, subject to acceler-

ation by plaintiff, or in certain limited circumstances by defendants. The closing was in fact accelerated by three days by plaintiff and the actual exchange of shares took place on June 29, 1962. Since late in 1959 plaintiff's shares have been listed on the New York Stock Exchange.

Within a period of less than six months after June 29, 1962 defendants sold some of their shares of plaintiff at a profit, over the June 29 price of said stocks, of $42,895 for defendant Booth and $12,309 for defendant McCarthy. These profits are recoverable under § 16 only if the sales of the stock took place within six months of the purchases. Hence the first issue is whether the date of purchase here is January 24, 1959, the date of the contract to purchase, or June 29, 1962, the date of the actual transfer of the shares.

The act in § 3(a) (13) contains the definition: "The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." This does not, however, automatically sweep any contract to purchase regardless of its terms, into the definition of purchase. The difficulty here is in deciding whether a particular *sui generis* agreement contains such terms that the date of the contract is to be taken as the date of purchase of the stock so as to start the running of the revelant six-month period under § 16.

No case has been found which has passed upon a contract containing the exact terms of the contract involved here. The nearest case, one on which both parties rely, is Blau v. Ogsbury, 2 Cir., 210 F.2d 426. In that case an officer of a corporation in 1945 exercised his option to purchase so that a binding contract arose under which he was to purchase 10,000 shares of the company's stock at $4.50 per share. However, payment for and delivery of the stock could be postponed at his election until the occurrence of certain events, and was in fact postponed until 1948. It was held that "the 'purchase' was consummated in 1945 when Ogsbury mailed his notice of

election and thereby incurred an irrevocable liability to take and pay for the stock". Defendants rely on this language as decisive in the present case, arguing that the January 14, 1959 contract was a binding and irrevocable commitment on their part to acquire the stock of Varian and hence that date should be regarded as the date of purchase.

However, plaintiffs point out that while the contract of January 14, 1959 was a binding one, it did not definitely fix the price per share of the Varian stock or the exact number of shares to be acquired by defendants. These matters could be determined only on the actual closing date when the contract formula would be applied to the then existing facts. In Blau v. Ogsbury, supra, the agreement was for the purchase of a definite number of shares at a definite price, and this fact was implicit in the court's holding that incurring an irrevocable liability to take and pay for the stock constituted a purchase. This is emphasized by the fact that the court in explaining the reason behind its decision pointed out that, "It matters not to the speculator who has title or possession or who can vote the stock or receive dividends. What he needs is firm assurance that a fixed quantity can be acquired or disposed of at a fixed price; and his commitments are on that basis."

■ As plaintiffs point out, if January 14, 1959 is here taken as the date of defendants' purchase of the stock, then during the six-month period which is relevant under § 16, defendants would not know exactly how many shares of Varian stock they owned, or what the eventual purchase price would be. Consequently, neither they nor anyone else could know at the time whether any sales of Varian stock made during the six-month period were made at a profit or a loss. This would render difficult enforcement of § 16. Where the closing date is deferred as long as it was in this situation, the two-year period of limitations for bringing suit might well have expired before it could be determined whether or not a profit had been made on a sale of the stock. More important, however, the provisions of § 16, designed to prevent the taking of "insider profits" would be rendered largely ineffective if applied to a six-month period when the holder of the stock does not know the price which he must eventually pay for the stock and hence cannot know what profit, if any, he can make by selling. In the circumstances of the present case the purpose of the act will best be attained by a holding that the purchase of the stock and the beginning of the relevant six-month period took place on June 29, 1962 when defendants for the first time could determine the exact price at which they were acquiring the Varian shares.

■■ Defendants further argue that in any event this transaction fell within the exemption provided by § 16(b) of the act on the ground that the Varian shares were "acquired in good faith in connection with a debt previously contracted." Their position seems to be that if the January 14, 1959 contract was not a purchase, then it created a debt, that is, an obligation on the part of the plaintiff to deliver a determinable number of its shares to defendants at a future date, and therefore the acquisition of these shares by defendants in 1962 was in connection with that previously contracted debt. Such an interpretation would open the door to widespread evasion of the act, since any acquisition of stock could take the form of a contract in which the seller would owe a debt, that is, would have a firm obligation to deliver the stock at some future date, and the buyer would also owe a debt, that is, would have a corresponding obligation to pay for the stock at a future date in money or other property. Clearly the debt referred to in § 16(b) must be an obligation independent of the obligation to deliver the very stock involved in the purchase. The "debt previously contracted" must be "an obligation to pay a fixed sum certainly and at all events, existing prior to and apart from the settlement of the obligation by the trans-

fer of stock." Rheen Manufacturing Company v. Rheen, 9 Cir., 295 F.2d 473, 476.

Defendants' motion for summary judgment is denied and plaintiff's motion for summary judgment is allowed.