Donald **BRENNER**,

v.

Fred W. **JOHNSON** and Career Academy, Inc.

No. 69–C–410.

United States District Court, E. D. Wisconsin.

April 5, 1971.

Supplemental Opinion June 15, 1971.

Frank & Hiller, Milwaukee, Wis. (local counsel), Garwin & Bronzaft, New York City, for plaintiff.

David E. Beckwith and William J. Willis, Milwaukee, Wis., for Fred W. Johnson.

Godfrey & Kahn, Milwaukee, Wis., for Career Academy, Inc.

OPINION

TEHAN, Chief Judge.

The plaintiff in this action to recover short-swing profits pursuant to § 16(b)[1] of the Securities Exchange Act of 1934 (15 U.S.C. § 78p(b) ) has moved for summary judgment. The defendants agree that no genuine issue of material fact exists with respect to the issue of liability, asserting that the only question

1. § 16(b) provides:
"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection

is a legal one—is the transaction complained of exempt from § 16(b) by reason of Rule 16b–9 [2] of the Securities and Exchange Commission. (17 C.F.R. § 240.16b–9)

At all times material hereto, the defendant, Fred W. Johnson, was a corporate insider, an officer-director, of defendant Career Academy, Inc., a company the stock of which is registered on a national securities exchange. In July of 1967, he filed a Form 3, Initial Statement of Beneficial Ownership of Securities, pursuant to § 16(a) of the Act (15 U.S.C. § 78p(a) ) revealing his ownership of 35,528 shares of Career's common stock. In November of 1967, also pursuant to § 16(a), he filed a Form 4, Statement of Changes in Beneficial Ownership of Securities, revealing the purchase on October 12, 1967, of 6000 shares of Career's common stock as a result of exercise of a non-transferable qualified stock option and a sale of 20,-000 shares as a part of a public offering described in a prospectus dated September 28, 1967.[3] (Affidavit attached to motion). The shares sold were actually transferred on or about October 6, 1967 and were subject to no restrictions. The shares purchased were subject to restrictions contained in Career's option plan and its agreement with Johnson under that plan prohibiting transfer for three years. As computed prior to the stock split, the shares sold were sold for $49.25 a share and those purchased pursuant to the option were purchased for $6.585 a share.

On July 18, 1969, the plaintiff, Donald Brenner, purchased 25 shares of Career's common stock and on August 25,

---

with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

2. Rule 16b–9 provides:
"(a) Any acquisition or disposition of an equity security involved in the conversion of an equity security which, by its terms or pursuant to the terms of the corporate charter or other governing instruments, is convertible immediately or after a stated period of time into another equity security of the same issuer, shall be exempt from the operation of section 16(b) of the Act: *Provided, however,* That this section shall not apply to the extent that there shall have been either (1) a purchase of any equity security of the class convertible (including any acquisition of or change in a conversion privilege) and a sale of any equity security of the class issuable upon conversion, or (2) a sale of any equity security of the class convertible and any purchase of any equity security issuable upon conversion (otherwise than in a transaction involved in such conversion or in a transaction exempted by any other rule under section 16(b) within a period of less than 6 months which includes the date of conversion.
(b) For the purpose of this section, an equity security shall not be deemed to be acquired or disposed of upon conversion of an equity security if the terms of the equity security converted require the payment or entail the receipt, in connection with such conversion, of cash or other property (other than equity securities involved in the conversion) equal in value at the time of conversion to more than 15 percent of the value of the equity security issued upon conversion.
(c) For the purpose of this section, an equity security shall be deemed convertible if it is convertible at the option of the holder or of some other person or by operation of the terms of the security or the governing instruments."

3. The figures on this Form 4 were adjusted to reflect a 2 for 1 stock split distributed on October 27, 1967.

1969 he commenced this action asking that Johnson account for and pay over to Career profits realized from the above described sale and purchase. The parties apparently agree that the fact that the plaintiff did not own Career stock at the times of the purchase and sale is of no import, and the defendants have not pressed a defense of failure of the plaintiff to request Career to bring suit before commencing this action.

The sole question presented with respect to liability is whether the exercise by the defendant Johnson of his option is a § 16(b) purchase of stock which, when coupled with a sale within six months resulting in a profit, renders him accountable to Career for that profit or whether it was a conversion of an equity security, concededly at less than 15% of the value of the stock received, exempt under Rule 16b–9. In resolving that question, it is helpful to consider the following statement of general principles applicable in § 16(b) cases contained in the recent case of Bershad v. McDonough, 428 F.2d 693, 696 (7th Cir. 1970):

> "Section 16(b) was designed to prevent speculation in corporate securities by 'insiders' such as directors, officers and large stockholders. Congress intended the statute to curb manipulative and unethical practices which result from the misuse of important corporate information for the personal aggrandizement or unfair profit of the insider. Congress hoped to insure the strict observance of the insider's fiduciary duties to outside shareholders and the corporation by removing the profit from short-swing dealings in corporate securities. Conversely, Congress sought to avoid unduly discouraging bona fide long-term contributions to corporate capital. See Blau v. Lamb, 363 F.2d 507, 514–516 (2d Cir. 1966), certiorari denied, 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed. 2d 542; Petteys v. Butler, 367 F.2d 528, 532 (8th Cir. 1966), certiorari denied sub nom. Blau v. Petteys, 385 U. S. 1006, 87 S.Ct. 712, 17 L.Ed.2d 545;

Blau v. Max Factor & Co., 342 F.2d 304, 308 (9th Cir. 1965), certiorari denied, 382 U.S. 892, 86 S.Ct. 180, 15 L. Ed.2d 150; Smolowe v. Delendo, 136 F.2d 231, 237–239 (2d Cir. 1943), certiorari denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.

> In order to achieve its goals, Congress chose a relatively arbitrary rule capable of easy administration. The objective standard of Section 16(b) imposes strict liability upon substantially all transactions occurring within the statutory time period, regardless of the intent of the insider or the existence of actual speculation. This approach maximized the ability of the rule to eradicate speculative abuses by reducing difficulties in proof. Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect. See Petteys v. Butler, supra, 367 F.2d at pp. 532–533; Smolowe v. Delendo, supra, 136 F.2d at pp. 236–237; Blau v. Lamb, supra, 363 F.2d at 515. The harshness of the rule was mitigated, however, by confining its coverage to a period of six months, thereby ensuring the minimum adverse effect upon valuable, long-term investments and at the same time facilitating easy and certain compliance with the strictures of Section 16(b). The thrust of the statutory scheme thus placed responsibility for meticulous observance of the provision upon the shoulders of the insider. He was deemed capable of structuring his dealings to avoid any possibility of taint and therefore must bear the risks of any inadvertent miscalculation. Cf. Polaroid Corp. v. Casselman, 213 F.Supp. 379, 382 (S.D.N. Y.1962); see generally, II Loss, Securities Regulation, Ch. 6C, pp. 1040, et seq. (2d ed. 1961.)"

It is also important to remember that an exercise of a stock option has been ruled a purchase under § 16(b), (Volk v. Zlotoff, 285 F.Supp. 650 (S.D.N.Y.1968)) and that a former Commission rule exempting acquisitions of stock pursuant to restricted stock options from the op-

eration of § 16(b) was held invalid as inconsistent with the purpose of the Act. (Perlman v. Timberlake, 172 F.Supp. 246 (S.D.N.Y.1959) ).

Faced with this authority, the defendant Johnson contends that his purchase of stock pursuant to his option was an acquisition involved in the conversion of an equity security exempt from § 16(b) under Rule 16b–9. Assuming that a stock option is an "equity security" within the meaning of the rule, it would seem that the rule, to the extent it exempts the exercise of stock options from § 16(b), is invalid for the same reasons as that dealt with in Perlman v. Timberlake, *supra*.

While conceding the correctness of the *Perlman* decision, the defendant Johnson, as we read his position, argues that option exercises exempted as conversions under Rule 16b–9 are not subject to the same infirmities as those exempted under the rule involved in *Perlman* because of the 15% payment limitation in Rule 16b–9. In other words he contends that inside information would be neither necessary nor helpful to a corporate insider in making his determination whether to exercise or convert his option, when the option can be exercised or converted at a purchase price of 15% or less of the value of the stock received. Since the purpose of § 16(b) is to prevent unfair use of inside information by corporate insiders in short term trading, and since inside information is not a significant factor in the transactions he claims to be exempt under Rule 16b–9 because the profits realizable are so great that the presence or absence of inside information would not influence the insider, he claims that Rule 16b–9, if applied to exempt the exercise of a stock option as a conversion of an equity security, would not be inconsistent with the purpose of the statute.

We agree with the plaintiff that it would be indeed anomalous to hold that an insider realizing a profit up to 85% on sale of stock within 6 months of exercise of an option must account for that profit under § 16(b) while one realizing a greater profit is exempt under Rule 16b–9. And we do not agree that use of inside information in circumstances such as those presented here is unlikely. Its use is possible if only to enable the insider to await the time when the 15% qualification of the rule is applicable. We therefore hold that Rule 16b–9, if interpreted to exempt from § 16(b) transactions involving "conversions" of stock options, is invalid on the reasoning set forth in *Perlman*. We also express great doubt as to the propriety of such an interpretation, believing that the use of the term "conversion" contemplates an exchange of economic equivalents, an exchange not present in this case. See Petteys v. Butler, 367 F.2d 528, 1 A.L.R.Fed. 702 (8th Cir. 1966), certiorari denied 385 U.S. 1006, 87 S.Ct. 712, 17 L.Ed.2d 545; Blau v. Lamb, 363 F.2d 507, 523 (2d Cir. 1966), certiorari denied 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542.

The defendant Johnson further argues that even if Rule 16b–9 is invalid, he can escape liability under § 16(b) by reason of § 23(a) [4] of the Act (15 U.S.C. § 78w(a) ). However, the record does not establish that he in any way relied on the rule and § 23(a) is therefore inapplicable.

At the oral argument, counsel for the defendant Johnson indicated that if the plaintiff succeeded on his motion, additional information on the question of damages might have to be brought to the attention of the court. That information should be submitted by May 3, 1971, and the plaintiff may submit a response by May 31, 1971.

---

4. § 23(a) provides in part:

" * * * No provision of this chapter imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule or regulation of the Commission or the Board of Governors of the Federal Reserve System, notwithstanding that such rule or regulation may, after such act or omission, be amended or rescinded or be determined by judicial or other authority to be invalid for any reason."

Counsel for the plaintiff will prepare an order pursuant to this opinion and submit it to opposing counsel for approval as to form.

### SUPPLEMENTAL OPINION

On April 5, 1971 this court filed its opinion in the above matter ruling that the defendant, Fred W. Johnson, was liable under § 16(b) of the Securities Exchange Act of 1934 for short-swing profits realized after a sale and purchase of stock of the defendant, Career Academy, Inc. An opportunity was afforded to submit additional information on the question of damages. Briefs and an affidavit on that question have now been received and considered by the court, together with the record herein.

Counsel agree that the amount recoverable is to be computed by applying Rule 16b–6 of the Securities & Exchange Commission, which limits the profits recoverable to the difference between the proceeds of the sale and the lowest market price of any security of the same class within six months before or after the date of the sale. Because they do not agree on the date of the sale, counsel have been unable to arrive at an agreed computation of profits under that rule. Counsel for the plaintiff claims that the date of sale was September 28, 1967, the date of the prospectus and an underwriting agreement covering the shares; counsel for the defendant Johnson contends that the date of sale was October 6, 1967 when the shares were delivered and paid for pursuant to that agreement. Using the plaintiff's date, the amount of profits is $48,750; using the defendant Johnson's date, the amount of profits is $33,750.[1]

It is the position of the defendant Johnson that the sale did not occur on September 28, 1967, the effective date of the prospectus, because conditions still remained to be satisfied on that date which created uncertainty as to whether any divestment of his beneficial ownership would occur. Thus his counsel states in his brief:

"There are several events that can occur after the registration statement becomes effective that are the equivalent of unsatisfied conditions and will prevent the consummation of a sale of stock pursuant to the registration statement. Among these are the following: (1) A stop order suspending the effectiveness of the registration statement or proceedings for that purpose being instituted or pending or contemplated under the Act; (2) a discovery that the registration statement, the prospectus or any amendment or supplement thereto do not comply in all material respects to the requirements of the Act; (3) a finding that the above described documents contain untrue statements of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading. If any one of these events had occurred, it would have resulted in no sale of stock for Johnson or any other selling stockholder listed in the prospectus. The beneficial ownership of the stock was retained by Johnson until the shares were transferred and payment made therefor."

We cannot read those suggested possible occurrences as being conditions to be satisfied before Johnson's beneficial ownership of his stock covered by the prospectus was effected. In our opinion the defendant Johnson made a firm commitment to sell his stock on September 28, 1967, and it was not contemplated on that date that the sale might be ruled illegal and halted. Profits must be computed under Rule 16b–6 using that date as the date of sale. The defendant Johnson is also liable for interest from the date of his exercise of the stock option on October 12, 1967.

Counsel for the plaintiff will prepare an order pursuant to this opinion and submit it to opposing counsel for approval as to form.

---

1. Neither party has challenged the accuracy of the other's computation.