Donald **BRENNER**, Plaintiff-Appellee,

v.

**CAREER ACADEMY, INC.**, Defendant-Appellee,

v.

Fred W. **JOHNSON**, Defendant-Appellant.

No. 71–1675.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1972.

Decided Sept. 12, 1972.

Rehearing Denied Nov. 14, 1972.

---

David E. Beckwith and Robert P. Goldstein, Milwaukee, Wis., for defendants-appellants; Foley & Lardner, Milwaukee, Wis., of counsel.

Sidney L. Garwin and Bertram Bronzaft, New York City, M. P. Frank, Gerald J. Kahn, Milwaukee, Wis., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, DURFEE,* Senior Judge, and ESCHBACH,** District Judge.

DURFEE, Senior Judge.

This stockholder's derivative suit was instituted in the United States District Court for the Eastern District of Wisconsin.[1] Plaintiff sought to recover short-swing profits from defendant Fred Johnson, pursuant to section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). The parties agreed that there existed no genuine issue of material fact with respect to the question of liability, and plaintiff moved for summary judgment. The court below granted plaintiff's motion, and found defendant Johnson to be liable for $48,750.00 in short-swing profits, together with interest thereon from October 12, 1967. Defendants brought this appeal, alleging that (1) Rule 16b–9 of the Securities and Exchange Commission exempts from the coverage of section 16(b) of the Act the acquisition of stock through the exercise of a qualified stock option, and (2) assuming the subject transaction to be non-exempt, rule 16b–6 requires October 6, 1967 to be used as the measuring date of the sale, instead of September 28, 1967, and that recoverable short-swing profits be assessed in the amount of $33,750.00 instead of the $48,750.00 determined by the trial court. The judgment of the District Court is affirmed as to liability but modified as to the amount recoverable. Defendant Johnson is liable in the amount of $33,750.00 with interest thereon from October 12, 1967.

At the time of the transactions in question, defendant Fred Johnson was an officer and a member of the Board of Directors of Career Academy, Inc. [hereinafter referred to as Career], the stock of which is registered on a national securities exchange. In July 1967, Johnson filed a Form #3 (Initial Statement of Beneficial Ownership of Securities) with the Securities and Exchange Commission which indicated his ownership of 35,528 shares of Career's common stock. In November 1967, Johnson filed a Form #4 (Statement of Changes in Beneficial Ownership of Securities) with the Commission which indicated a purchase by him on October 12, 1967 of 6,000 shares of Career's common stock and a sale of 20,000 shares as part of a public offering described in a prospectus dated September 28, 1967. The purchase of October 12, 1967 was accomplished through the exercise of a nontransferable, qualified stock option. The above mentioned sale was made pursuant to an underwriting agreement entered into on September 28, 1967.

Appellant asserted below, and asserts now as a basis of this appeal, that the acquisition of Career stock pursuant to the stock option which he had been granted, constituted a conversion of equity securities within the meaning of Rule 16b–9 and, accordingly, was exempt from the operation of section 16(b) of the Act. The District Court held that if Rule 16b–9 be "interpreted to exempt from § 16(b) transactions involving 'conversions' of stock options [the rule], is invalid on the reasoning set forth in *Perlman.*"[2] 328 F.Supp. at 152. The court also expressed grave doubt as to the propriety of such an interpretation,

---

* Senior Judge James R. Durfee of the United States Court of Claims is sitting by designation.

** District Judge Jesse Eschbach of the Northern District of Indiana is sitting by designation.

1. The opinion of the court below is reported at 328 F.Supp. 149 (1971).

2. Perlman v. Timberlake, 172 F.Supp. 246 (S.D.N.Y. 1959).

since it felt that "the term 'conversion' contemplates an exchange of economic equivalents, an exchange not present in this case." *Id.* Rule 16b–9 is not susceptible to the interpretation urged by appellant.

█ The interpretation of "security" and "equity security" within the context of this case is presented in a slightly different posture than it has been in the great bulk of cases arising under the 1934 Act. In most of these cases, in which this question has arisen, it has been necessary to determine whether the instrument involved is a security in order to make the determination of whether the transactions involved come within the purview of the 1934 Act. *See, e. g.,* Movielab, Inc. v. Berkey Photo, Inc., 452 F.2d 662 (2d Cir. 1971); Kemmerer v. Weaver, 445 F.2d 76 (7th Cir. 1971); Rekant v. Desser, 425 F.2d 872 (5th Cir. 1970). In interpreting the term *security* within the framework of the above cited cases, the courts have been mindful that remedial legislation should be construed broadly to effectuate its purposes. Tcherepnin v. Knight, 389 U. S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). In this case, however, appellant contends that the stock option involved was a security in order that the transaction be brought within an exception [3] to section 16(b) of the 1934 Act and, thus, beyond the scope of the Act. Therefore, it is not necessary on the facts of this case to enunciate an all encompassing definition of *security*, as that term is used in 15 U.S.C. § 78c(a)(10) to hold that a stock option could under no circumstances come within this definition.

Indeed, this would not only be gratuitous but also in derogation of the precept that security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the money of others on the promise of profits." Tcherepnin v. Knight, *supra,* quoting S.E.C. v. W. J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

█ Rule 16b–9 does not exempt from the coverage of section 16(b) the receipt of stock pursuant to a qualified stock option plan, such as held by appellants. It is difficult to see how the possibility of "unfair use of information which may have been obtained by [an insider]", 15 U.S.C. § 78p(b), is diminished when the insider purchases shares of stock from his corporation pursuant to a stock option plan instead of going into the market. See Perlman v. Timberlake, 172 F.Supp. 246, 257 (S.D.N.Y. 1959). In *Perlman,* the District Court found that to the extent Rule X–16b–3 provided an exemption for stock acquired pursuant to defendant's restricted stock option, it was in conflict with the express provisions of section 16(b) of the Act and, therefore, invalid. Subsequently, Rule 16b–3 was amended. Here, as the District Court below noted, the interpretation urged by appellants would render Rule 16b–9 invalid. Moreover, not only has the Securities and Exchange Commission expressly indicated in Release No. 7826 that Rule 16b–9 "does not apply to the exercise of an option to purchase a security [4] but also, it seems unlikely that the Commission

---

3. Since, as appellants contend, Rule 2a11–1 (17 C.F.R. § 240.3a11–1) includes within the definition of equity security those securities which are convertible into equity securities, *e. g.,* common stock, the classification of the stock option here involved as a security would be a significant step towards holding that Rule 16b–9 is susceptible of the interpretation urged by appellants.

4. The release provided in pertinent part that, "[t]he amended rule [16b–9] does not apply to the exercise of an option to

purchase a security. However, provision is made whereby a cash or other payment may be required not to exceed 15% of the value of the equity security issued upon conversion." SEC Exchange Act Release No. 7826 (February 17, 1966). Appellant contends that the last sentence quoted above should be taken to mean that Rule 16b–9 exempts from the coverage of section 16(b) "conversions" of stock options which meet the 15% test. This is untenable, and would require a distortion of the plain language used by the Commission in the release.

would intend for 16b–9 to have this effect when 16b–3, as amended, which deals specifically with stock options, "exempts the acquisition of restricted, qualified, and employee stock purchase plan stock options, but not the acquisition of stock upon the exercise of such options." 34 Fed.Reg. 7574 (1969). In amending a rule dealing specifically with stock options, the Commission chose not to exempt from the coverage of section 16(b) the acquisition of stock pursuant to stock options. To divine a contrary intent from a rule which on its face has nothing to do with stock options, is unwarranted.

■ The District Court found the date of sale to be September 28, 1967 since it was at this time that "Johnson made a firm commitment to sell his stock * * * and it was not contemplated on that date that the sale might be ruled illegal and halted." Appellants contend that if the transaction involved be held not to be exempt from the operation of section 16(b), that the date of sale for the purpose of computing the amount of recoverable short-swing profits is October 6, 1967 since it was on this date that the actual transfer took place. Appellant is correct, and the amount of recoverable short-swing profits is $33,750.00 instead of $48,750.00.[5] Appellee cites Blau v. Ogsbury, 210 F.2d 426 (2d Cir. 1954) in support of the holding of the court below respecting the amount of recoverable profits. In *Blau*, under the original terms of the option agreement Ogsbury was to exercise his option by the mailing of notice to the company, and the date of mailing was to be considered the effective date of the transfer of title; however, the parties amended the agreement to provide for a postponement of payment, at Ogsbury's election, and although title to the stock and all rights thereto remained in the company pending payment, mailing the notice of election obligated Ogsbury for the amount of the purchase price. The notice was mailed to the company in December 1945 but payment was postponed until December 1948, at which time the stock was transferred. Since in July 1968 Ogsbury had sold 600 shares of identical stock, Blau brought an action under section 16(b). The court held that there had been no purchase and sale within a six-month period since the purchase had taken place at the time of the mailing of the notice, in 1945.[6] In the case at bar, appellant entered into an underwriting agreement on September 28, 1967, the date of the prospectus, and the actual transfer took place on October 6, 1967. It seems somewhat anomalous to hold that the rights and obligations of the parties became fixed at the time of the underwriting agreement and yet to hold that at the same time the sale pursuant to the underwriting agreement was part of a transaction proscribed by section 16(b) of the 1934 Act.

5. Neither party has challenged the accuracy of the other's computation.

6. *See* Bershad v. McDonough, 428 F.2d 693 (7th Cir. 1970) in which the court held that what was termed a sale of an option was nothing more than of stock and the sale occurred at the time the option was purchased. In *Bershad*, there had been not only a substantial price paid for the option, which was subsequently regarded as partial payment for the stock, but also the stock had been placed in escrow at the time the option was purchased and the vendee had been given irrevocable proxies to vote the stock. This case is illustrative of two points which are pertinent here: (1) The means used in attempting to avoid the 1934 Act, and section 16(b), are so varied that it would serve no useful purpose to conclude that even a non-transferable stock option might never come within the proscriptions contained in the Act; the labels used to describe many of these transactions belie their true nature. (2) The terms "sale" and "purchase" as used in the Act are not synonymous with "date of sale" as that term is used in Rule 16b–6, as herein interpreted.

In any event, the amount of short-swing profits which is recoverable is limited by Rule 16b–6(b) which provides that in the case of transactions covered by part (a) of the rule "the profits inuring to the issuer shall not exceed the difference between the proceeds of sale and the lowest market price of any security of the same class within six months before or after the date of sale." 17 C.F.R. § 240.16b–6(b). This rule was intended by the Commission to serve as a limitation on the short-swing profits recoverable in the event that the proscribed transaction involved a purchase of securities pursuant to an option acquired more than six months prior to its exercise or acquired pursuant to the terms of an employment contract entered into more than six months prior to its exercise. This rule contemplates that the date which serves as the measuring date be accompanied by a receipt of proceeds. Thus, in the instant case, the measuring date is October 6, 1967, and the profits recoverable are $33,750.-00. It should be noted that this construction of the term *sale* within the confines of Rule 16b–6 cannot be extended to restrict the meaning of that term as it is used in the Act or necessarily restrict the meaning of the term as used elsewhere in the rules promulgated by the Commission. For instance, it would be a distortion of the purpose of the Act to permit an insider to avoid liability altogether under 16(b) through the simple expedient of delaying the time of payment beyond the proscribed period while entering into a contract within the proscribed period which fixed the purchase price to be received for these shares.[7]

The judgment of the District Court is affirmed, as modified.

---

7. See Bershad, supra, 428 F.2d at 698.

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.