**Harry LEWIS, Plaintiff,**

v.

**James L. DWYER and Millipore Corporation, Defendants.**

**Civ. A. No. 73–3213–G.**

United States District Court,
D. Massachusetts.

Oct. 19, 1973.

**608**

Morris J. Levy, New York City, for plaintiff.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, David M. Roseman, Tyler & Reynolds, Boston, Mass., for defendant Millipore.

Donovan, Leisure, Newton & Irvine, New York City, Evan Y. Semerjian, Hale & Dorr, Boston, Mass., for defendant Dwyer.

## MEMORANDUM OF DECISION ORDERING DISMISSAL

GARRITY, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment. All the facts have been stipulated by the parties and the only question to be decided is whether the individual defendant, a corporate officer of the corporate defendant, had exercised a stock option within the six-month period proscribed by § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), so as to be liable under that act, or whether the six-month period had elapsed when the option was exercised.

Defendant Dwyer had been given stock options by the defendant Millipore Corporation, which has joined in the individual defendant's motion. Those options would have expired upon May 26, 1971. Because Dwyer was to have been away on business during the week the options expired and he was aware of the potential for § 16(b) liability, he prepared a notice that he was exercising the options and a check therefor and mailed these materials on May 21, 1971. That date was within the six-month period. The notice and checks were received and processed by the clerk of the corporation on May 24, 1971, beyond the six-month period. The company's stock option provisions provided that options could be exercised only by serving the necessary documents upon the clerk of the corporation. The narrow question to be decided is whether the options were exercised on May 21 or on May 24.

After hearing and upon consideration of the motion, the court grants the defendants' motion for summary judgment and orders dismissal of the case. In the court's opinion, the option was exercised on May 24, 1971, after the expiration of the six-month period.

Section 16(b) was intended by Congress to prevent unfair self-dealing on the basis of inside information. The method of accomplishing this end was an *in terrorem* effect produced by making the existence *vel non* of inside information irrelevant if corporate officers purchased and sold or sold and purchased shares of stock in their corporations within a six-month period. This purpose is wholly unrelated to the approaches urged by the parties initially for deciding when Mr. Dwyer exercised his stock options. The legal rules which have developed for determining when a contract offer has been accepted, or when statutory or insurance notices have been effectively given or when short versus long term capital gains are

earned for tax purposes are premised on considerations wholly unlike those which Congress was concerned with in enacting § 16 of the Securities Act. For this reason the court declines to adopt any of these three rationales in determining when the stock options in question were exercised.

Rather, the court has adopted two other approaches, both of which relate specifically to § 16. First, a purchase for purposes of § 16(b) occurs when the purchaser incurs "an irrevocable liability to take and pay for the stock." Blau v. Ogsbury, 2 Cir. 1954, 210 F.2d 426, 427; Stella v. Graham-Paige Motors Corp., 2 Cir. 1956, 232 F. 2d 299, cert. denied 352 U.S. 831, 77 S. Ct. 46, 1 L.Ed.2d 52 (1956). The court is of the opinion that under the stock option agreement which required service on the clerk of the corporation, Mr. Dwyer was not bound until the clerk of the corporation had personally received the materials necessary to execute the option from Mr. Dwyer.

Equally persuasive to the court is an analogy to situations where courts face ambiguous transactions and must determine whether they constitute a purchase or sale. In those cases the courts have applied a standard of whether the transaction involved was one that could lend itself to speculative abuse of the kind § 16 was intended to prevent. Cf. Newmark v. RKO General, Inc., 2 Cir. 1970, 425 F.2d 348; Blau v. Lamb, 2 Cir. 1966, 363 F.2d 507. The purchase of the stock here certainly did not occur on facts which give rise to the possibility of speculative abuse. Mr. Dwyer's control over the exercise of the option was decreased by the approaching expiration date, his business absence and his use of the mail. Moreover, the court does not view this construction of when the option was exercised as having any deleterious effect on the *in terrorem* approach of § 16(b).

For these reasons, it is ordered that summary judgment be entered dismissing the complaint.