Bertha SILVERMAN, Plaintiff,

v.

Alfons LANDA and Fruehauf Trailer
Company, Defendants.

United States District Court
S. D. New York.

Dec. 27, 1961.

Rosenfeld & Silverman, New York City, for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, New York City, Marvin F. Hartung, Eugene J. T. Flanagan, Donald Fried, New York City, of counsel, for defendant Alfons Landa.

Thomas E. O'Callaghan, New York City, for defendant Fruehauf Trailer Co.

THOMAS F. MURPHY, District Judge.

Cross motions for summary judgment raise novel and important questions of law under Sections 16(b) and 16(c) of the Securities Exchange Act of 1934 (15 U.S.C.A. §§ 78p(b) and (c), arising from the issuance by an insider of "Put" and "Call" options.

There is no dispute as to the facts. Plaintiff is a shareholder of Fruehauf Trailer Company. (Fruehauf) and brings this action both derivatively on behalf of Fruehauf and individually to recover "profits" realized by Landa in certain transactions involving Fruehauf stock. It is undisputed that on October 26, 1959, Landa was a director of Fruehauf and beneficial owner of 2,000 shares of its common stock which is registered on a national securities exchange. On that date Landa issued three options in respect to the Fruehauf common stock; two of the options were "Call" options, each of which conferred on the bearer of the option the right to purchase from Landa 500 shares of the common stock of Fruehauf upon payment of $24.375 per share. The other option was a "Put" option which conferred upon the bearer the right to sell Landa 500 shares of Fruehauf common stock at $24.375 per share. All three options were transferable and were for a period of one year.

Landa received a premium $5,000 for the issuance of these three options, $2,000 of which he allocated to each of the "Call" options and $1,000 of which he allocated to the "Put" option. This allocation was on the advice of his broker, and there is no dispute but that such allocation was both fair and realistic.

For purposes of clarification we quote the definitions of "Put" and "Call" options and "Straddles" as defined by the Put and Call Dealers' Association, Inc.

■ A "Call" is an option given for an agreed premium entitling the holder thereof at his option, to buy from the issuer of the option on or before a fixed date, a specified number of shares at a predetermined price.

■ A "Put" is an option given for an agreed premium entitling the holder thereof at his option, to sell to the issuer of the option on or before a fixed date, a specified number of shares at a predetermined price.

■ A "Straddle" consists of two separate options, one a "Call" and one a "Put." Both the "Put" and "Call" are identical as to stock, contract price and time expiration.

■ The "Premium" is the amount of money paid by the buyer for an option.

■■ All "Puts" and "Calls" are bearer options and must be endorsed by a member of the New York Stock Exchange, who thus guarantees performance by the issuer. Options are exercised by delivering them to the endorser together with the stock or purchase price, as the case may be, and are thus turned into actual purchases or sales.

See, too, Filer, Understanding Put and Call Options (1959).

On September 30, 1960, Landa sold 1,000 shares of the common stock of Fruehauf at $19 per share. This sale was not made in connection with the "Call" options previously issued by Landa. On October 20, 1960, Landa

paid $3,300 to a broker to assume his obligations under the "Put" option and one of the "Call" options. The "Put" option was subsequently exercised but the "Call" options expired unexercised on October 26, 1960.

The first question presented is whether the issuance by Landa, a corporate insider, of a "Straddle," i. e., the simultaneous issuance of a "Put" option and a "Call" option constitutes a purchase *and* sale of the underlying security for the purposes of § 16(b) of the Act in order to permit the plaintiff, on behalf of the corporation, to recover the insider's "profit."

Section 16(a) of the Act provides that, among others, a director of any issuer of an equity security registered on a national exchange shall report the amount of such securities of which he is the beneficial owner and any change in such ownership. Landa, it is agreed, did so report the giving of these options. Section 16(b), insofar as here relevant, provides in substance that any profit realized by an insider from any purchase and sale, or any sale and purchase, of an equity security of an issuer within a period of less than six months, shall inure to and be recoverable by the issuer.

We have been told that § 16(b) "was intended to be thoroughgoing, to squeeze all possible profits out of stock transactions, and thus to establish a standard so high as to prevent any conflict between the selfish interests of a fiduciary officer, director, or stockholder and the faithful performance of his duty." Smolowe v. Delendo, Corp., 136 F.2d 231, 239, 148 A.L.R. 300 (2d Cir., 1943), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.

Section 3(a) (13) [1] defines the term "purchase" to "include any contract to buy, purchase, or otherwise acquire," and § 3(a) (14) [2] defines the term "sale" as to "include any contract to sell or otherwise dispose of." These definitions are prefaced (§ 3(a)) with the phrase, "unless the context otherwise requires." [3]

1. 15 U.S.C.A. § 78c(a) (13).

2. 15 U.S.C.A. § 78c(a) (14).

3. 15 U.S.C.A. § 78c(a).

■ The first question for resolution is whether the terms "Purchase" and "Sale" encompass the simultaneous issuance of a "Put" and "Call" option or "Straddle."

Although no analogous case has been called to our attention and no regulation or rule has ever been issued by the Securities and Exchange Commission covering the same [4] except its regulation requiring such transactions to be reported by insiders,[5] we feel that, upon the facts and the law as we read it, the mere issuance of such a "Straddle" did not satisfy the requisites of § 16(b).

In Falco v. Donna Foundation, Inc., 208 F.2d 600, 40 A.L.R.2d 1340 (2d Cir., 1953) we are told that the time at which the insider's rights and obligations become fixed is controlling in the application of § 16(b). Cf. Park & Tilford v. Schulte, 160 F.2d 984 (2d Cir., 1947).

■ It is clear that a person who issues a "Put" and a "Call" irrevocably binds himself to purchase (and sell) the underlying securities upon tender in accordance with the terms of the options. So, it follows that the issuer of the options has contracted to purchase and sell the underlying securities, but only when, as and if the option is exercised.

The two cases that each party rely on do not help. In Blau v. Ogsbury, 210 F.2d 426 (2d Cir., 1954) it was held that a purchase had occurred for the purposes of § 16(b) at the time when the insider exercised an option and obligated himself to purchase the shares subject to the option, despite the fact that he made payment and caused delivery years later. This was so because at that time he thereby incurred an irrevocable liability to take and pay for the stock. In Shaw v. Dreyfus, 172 F.2d 140 (2d Cir., 1949) the defendant director owned stock in the company and received warrants to purchase more shares. The court held that the mere receipt of the warrants

was not a purchase because it did not come within the generally understood meaning of "purchase," and therefore he performed no act, made no agreement, paid no consideration for the receipt of his rights.

Here Landa undoubtedly received a substantial consideration for the giving of the options. But they were nothing more than irrevocable *offers* for one year to buy and sell. In essence, therefore, Landa bound himself to keep his offers open for the stated time and there was to be no contract to buy or sell unless or until that offer was accepted. Landa admittedly had no control over the optionee nor could he know if or when the options would be exercised. Not until the stock was "Put" to him or until he was "Called" to sell would his option contract or continuing offer blossom into a purchase or sale contract within the purview of § 16(b).

It is only by an involved process of semantics that these two options can be considered a "purchase" *and* "sale" contemplated by § 16(b). True it is that each may be considered a unilateral contract to purchase and sell but each is conditioned on an exercise within the time limitation plus the possibility that they would expire without being exercised. To us the "context otherwise requires."

The SEC, who filed a brief as *amicus* at our request, feels that the definitions in the statute are broad enough to encompass a "Straddle." Its argument is based upon the asserted change in an insider's beneficial ownership when he gives a "Straddle" but it is frank to admit that the extent to which the beneficial ownership has been effected may not be susceptible of exact determination at the time the option is issued.

While we may assume that there is some change in the beneficial ownership however defined, we fail to see such,

---

4. The Commission's staff submitted reports on "Puts" and "Calls" in 1935, 1939, 1944 and 1945, but no rules were ever adopted.

5. Rule 16a–6 (17 C.F.R. 240.16a–6).

change as creates a "purchase" and "sale" of the underlying security. Despite all the theorizing the fact remains undisputed that the "Calls" were not exercised and when issued by Landa no one could say they would be. How then can there be a "purchase" *and* "sale."

Plaintiff alternatively argues that a "Straddle" was an arbitrage transaction for which the "profit" is recoverable pursuant to Rule X–16 D–1, 17 C.F.R. § 240–16d–1.

 In the absence of any statutory definition Judge Clark has defined the three different types of arbitrage in Falco v. Donna Foundation, Inc., supra, 208 F.2d at 603. In short, arbitrage is the simultaneous matched purchase and sale of identical or equivalent securities. Since, as we said, a "Straddle" was not a purchase and sale under § 16(b) it is much less, but for the same reason, an arbitrage transaction.

The next question should really be divided into two—does the issuance of a "Call" violate § 16(c) and, if it does, is a private right of action available to plaintiff for its violation? Both of these questions are also ones of first impression.

 Section 16(c) makes it unlawful for an insider, directly or indirectly, to sell any equity security of the issuer if he does not own the security sold or, if owning it, he does not deliver the security against the sale within 20 days thereafter or does not deposit the security in the mails within five days after the sale.[6]

"The section thus prohibits two types of sales. In one the insider does not own the security sold but borrows to make delivery, subsequently buying an identical number of shares to deliver to the lender to complete the transaction. In the other, the insider owns sufficient securities to cover the sale but chooses to borrow to make delivery. Subsequently, he completes the transaction by either buying stock or using his own stock to

repay the lender. The latter is known as 'selling against the box,' and has exactly the same effect on the stock market as the short sale by a seller who owns no stock at the time of the sale." Cook & Feldman, "Insider Trading Under the Securities Exchange Act," 66 Harv.L. Rev. 612, 637–638 (1953). See also Rule X–3B–3, 17 C.F.R. 240.3b–3.

 The legislative history of § 16 (c) makes clear that Congress was concerned with "short sales" and "sales against the box" as that type of trading was used by corporate insiders deriving large profits from transactions in their company's securities while they were concealing the fact that they were so engaged.[7] To prevent this evil § 9 of the Act (15 U.S.C.A. § 78i) prohibited manipulative devices and § 16(c) prohibited "short sales" and "sales against the box" by insiders.

It appears obvious to us that § 16(c) would not be applicable to an insider who issued a "Call" option and owns sufficient shares of the underlying security to make delivery should the "Call" option be exercised. It is undisputed that Landa owned 2,000 shares at the time he issued both "Calls." The puchaser of a "Call" option cannot, and does not, expect delivery until he exercises his option.

Plaintiff's claim of Landa's violation of § 16(c) is bottomed on the definition of a sale in § 3(a) (14). If we are to be guided by that definition alone and not by the context or realities of "Put" and "Call" trading then it must follow that Landa violated § 16(c) because he certainly did not deliver the securities in any of the two ways the Act provides. But the realities are that he was not called upon to make delivery because the option was never exercised; in fact he could not make delivery at the time he issued the "Call" since there was no one in being to deliver to, and in any event, as we have held above, the context required us to exclude these "Call" options from the definition of sale or contract to

---

6. An exception is provided which is not here pertinent.

7. S.Report No. 1455, 76th Cong., Second Sess., pp. 51–52, 63, 65–66, 68.

**198**

sell. The SEC in its *amicus* brief agrees that Landa by the issuance of the "Calls" did not violate § 16(c) and that that section is not applicable, particularly where the insider actually owns sufficient securities at the time he issues the "Call."

Holding as we do that § 16(c) was not violated we are not called upon to decide the subsidiary question whether a violation of it would create a private right of action.

Accordingly, plaintiff's motion for summary judgment is denied and defendant Landa's motion for summary judgment is granted.

These are orders. No settlements are necessary.