**Louis L. ROGERS, Plaintiff,**

v.

**Harold L. VALENTINE et al., Defendants.**

**No. 64 Civ. 939.**

United States District Court.
S. D. New York.
Civil Division.
Aug. 20, 1969.

Andrew E. Kuchinsky, New York City, for plaintiff.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendants John I. Taeni and Gregory and Sons.

Stroock & Stroock & Lavan, New York City, for defendants Richard Weininger and Premier Investing Corporation.

Beekman & Bogue, New York City, for defendants Harold L. Valentine and Joseph A. Aylward.

LASKER, District Judge.

Plaintiff sues representatively and derivatively on behalf of Virginia Iron, Coal and Coke Company (hereinafter "Virginia Iron") and its stockholders.

On November 18, 1963, defendants Valentine, Weininger, and Gregory and Sons, acting for themselves and on behalf of other stockholders of Virginia Iron (friends, relatives and customers), executed a Stock Purchase Agreement providing for the sale to Bates and Company of 400,000 shares of Virginia Iron common stock at the price of $12.00 per share. The parties have stipulated in the pre-trial order that these 400,000 shares, representing approximately 29 percent of the outstanding shares of the company, constituted working control of Virginia Iron. The closing date of the Stock Purchase Agreement was December 12, 1963, and on that date defendants delivered 400,000 shares of Virginia Iron common stock to Bates and Company, with defendants Valentine, Weininger, Taeni and Aylward concurrently resigning as directors of Virginia Iron.

The complaint, as filed on March 25, 1964, contained two causes of action. The first cause of action alleged a violation of Section 16(b) of the Securities Exchange Act of 1934[1], and sought to recover from defendants short-swing prof-

1. 15 U.S.C. § 78.

its allegedly made by them between June 1 and December 31, 1963, in the course of their dealings in the common stock of Virginia Iron. The second cause of action alleged that the directors-defendants breached their fiduciary duties as directors of Virginia Iron (defendant Gregory and Sons allegedly acting in concert with these directors) by selling their shares in Virginia Iron to Bates and Company for a premium of $2.00 per share above the market price. As part of the sales agreement, the defendants agreed to resign from Virginia Iron's board of directors and vote to install as directors individuals designated by Bates and Company.

Defendants contend that the original federal cause of action has been abandoned, that under the special circumstances of this case plaintiff should not be allowed to amend his pleadings to establish new federal causes of action, and that the court should decline to exercise its pendent jurisdiction as to the state cause of action.

## I. PRIOR PROCEEDINGS

Heretofore defendants Taeni and Gregory and Sons moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on the first cause of action, and for an order pursuant to Rule 12(b) dismissing the second cause of action for lack of jurisdiction of the subject matter. On May 25, 1964, Judge Cashin denied both motions in an unreported opinion. Defendant Aylward thereafter made an identical motion, and in Rogers v. Valentine, 37 F.R.D. 231 (S.D.N.Y.1964), Judge Cannella granted the motion for summary judgment as to the first cause of action, but denied the prayer to dismiss the second cause of action. Subsequently, on January 22, 1965, an order was signed by Judge Edelstein, upon consent of counsel for the plaintiff, dismissing the first cause of action under Section 16(b), with prejudice, as against defendants Gregory and Sons and Taeni. A motion identical to the two

above was thereafter made on behalf of defendants Weininger and Premier Investing Corporation. Judge McLean denied this motion on June 6, 1966.

On April 19, 1968, the parties to this action filed a joint pre-trial memorandum, which included a statement by plaintiff's counsel that the first cause of action under Section 16(b) was abandoned, plaintiff's counsel stating that "on the basis of his investigation no cause of action exists against the defendants." Paragraph No. 2 of the pre-trial order, filed April 19, 1968, incorporated the above language and finalized the abandonment of the Section 16(b) cause of action. As of April 1968, then, only the second cause of action, for breach of fiduciary duty under state law, remained to be litigated.

### A. Attempted Addition of a New Cause of Action

On February 24, 1969, almost one year after the pre-trial order was signed, plaintiff filed a supplemental pre-trial memorandum. By this document plaintiff attempted to interject a cause of action under Section 10(b) of the Securities Exchange Act of 1934 [2], and Rule 10b–5 promulgated thereunder. The only enlightenment as to plaintiff's position contained in the memorandum is the bald statement that: "It is plaintiff's present intention, upon the trial of this action, to proceed in accordance with the changes contained herein."

Although noting the irregular manner in which this request was put before the court, as well as before the opposing parties, the court nonetheless deemed it appropriate to treat it as a motion to amend the complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. The lack of edifying papers, coupled with the fact that the case was assigned for trial a very short time before the scheduled trial date, made it advisable, in order to afford the opposing parties an opportunity to make their position clear, to proceed to trial prior to decision as to the

2. 15 U.S.C. § 78.

propriety of plaintiff's attempt to amend his pleadings.

As the facts emerged, it became known to the court that counsel for plaintiff had previously indicated a desire to add a cause of action under Section 10(b) of the Securities Exchange Act. At that time (at the pre-trial conference in April 1968) the pre-trial examiner informed plaintiff's counsel that the proper manner in which to proceed was to move formally to amend the complaint. Such a motion was never subsequently made. To the contrary, plaintiff's counsel assured the defendants that he had no intention of pursuing the Section 10(b) theory.[3]

It is settled that leave to amend pleadings should be liberally granted. Rule 15(a), FRCP. Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380, 384 (2d Cir. 1968). As the Court there stated:

"Narrow pleading rules should not be applied to foil an honest plaintiff's efforts to gain redress. In examining the circumstances which might justify not granting plaintiff this opportunity to be heard on the merits, the trial courts should normally focus on the resultant prejudice to defendant."

Applying this test, it is clear that to allow the plaintiff to amend his complaint under the special and unusual circumstances described above would be prejudicial to the defendants. The plaintiff sought to amend his complaint a full five years after it was filed. This delay, though not conclusive, is a factor which must be weighed in determining the matter. Middle Atlantic Utilities Co. v. S. M. W. Development Corp., supra, at 384. As the court in Portsmouth Baseball Corp. v. Frick, 21 F.R.D. 318, 319 (S.D. N.Y.1958), stated:

"Where there has been an unreasonable delay in amendment by the plaintiff to the prejudice of the defendant, a refusal to permit amendment is warranted."

Here the plaintiff compounded the prejudice that the passage of time alone imposed by affirmatively assuring his adversaries that he would not seek to interject a Section 10(b) cause of action, and taking no action to do so until the midnight hour. The defendants were entitled to rely upon this representation, especially since the plaintiff did not broach the subject again until the eve of trial. The proposed cause of action under Section 10(b), which is basically an anti-fraud statute, would have interjected into the case fresh elements which the defendants were assured they would not have to litigate at trial. It can certainly be said here that

" * * * this is not a situation where the proposed amendment adds little to the claim as originally stated, so that the defendants, having from the beginning had notice of the general nature of the claim asserted, would not be prejudiced." Portsmouth Baseball Corp. v. Frick, supra, at 320.

For the above reasons, the court denies the plaintiff's application to amend his complaint by asserting a cause of action under Section 10(b) of the Securities Exchange Act.

## B. Attempted Amendment of Pleadings to Conform to the Evidence

At the termination of the trial, plaintiff's counsel addressed a letter to the court advancing for the first time a cause of action under Section 16(c) of the Securities Exchange Act of 1934.[4] I treat this informal request to amend the complaint as a motion to amend to conform to the evidence, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure.

The thrust of Section 16(c) is that corporate insiders are prohibited from selling short. This court, in Silverman v. Landa, 200 F.Supp. 193, 197 (S.D.N.Y. 1961), summarized Section 16(c) as follows:

"The section thus prohibits two types of sales. In one the insider does not

3. T.T. pp. 21–22.

4. 15 U.S.C.A. § 78p.

own the security sold but borrows to make delivery, subsequently buying an identical number of shares to deliver to the lender to complete the transaction. In the other, the insider owns sufficient securities to cover the sale but chooses to borrow to make delivery. Subsequently, he completes the transaction by either buying stock or using his own stock to repay the lender. The latter is known as 'selling against the box,' and has exactly the same effect on the stock market as the short sale by a seller who owns no stock at the time of the sale."

Under Section 16(c), then, the plaintiff must make a showing that the defendants sold stock that they did not own at the time of the sale. Plaintiff's contention here is that on November 18, 1963, when defendants entered into the Stock Purchase Agreement, they contracted to deliver 400,000 shares upon the closing, and that since on November 18, 1963, they did not own 400,000 shares collectively, Section 16(c) was violated.

■■ The clear import of Section 16(c) is that the corporate insider must sell *for his own account* securities that he does not at the time own, representing that he does in fact own the shares in question. Section 16(c) does not encompass a situation such as the one here in which a corporate insider sells securities as an agent for another, when the latter in fact does own the securities involved. When the insider does sell as the agent for a true owner, he is compelled neither to purchase the securities at some later date nor to deliver securities that he himself owns in order to make delivery. It is clear from the wording of the Stock Purchase Agreement that the defendants here clearly made known that they were acting as agents for the true owners of stock in regard to that portion of the 400,000 shares which they themselves did not own on November 18, 1963.[5]

■ The plaintiff presented no evidence whatsoever which would bring the activities of defendants within the area proscribed by Section 16(c). It is evident, then, that no cause of action under Section 16(c) was tried "by express or implied consent of the parties." But even if this were not so, to allow the plaintiff to introduce by letter, after the conclusion of the trial, a new theory of the case and a new cause of action would be clearly impermissible, even in the light of the philosophy of permitting liberal amendments to pleadings; since under such circumstances defendants did not have the "fair opportunity to defend" as to the new theory or cause of action required by Lomartira v. American Automobile Ins. Co., 371 F.2d 550 (2d Cir. 1967). See also Caddy-Imler Creations, Inc. v. Caddy, 299 F.2d 79, 84 (9th Cir. 1962).

The "motion" to add a cause of action under Section 16(c) of the 1934 Act is therefore denied.

## II. JURISDICTION

### A. *Diversity of Citizenship*

■ Prior to the conclusion of the trial, there appeared to be no dispute between the parties that, if the federal causes of action could not be pleaded or were dismissed, pendent jurisdiction would be the only basis upon which a federal court could retain the case. Since the conclusion of the trial, in his letter referred to above, plaintiff's counsel has pressed the claim that a basis for diversity jurisdiction exists. His contention is that in this derivative suit defendant Virginia Iron should be realigned as a party plaintiff, since it is the real party in interest. Virginia Iron is a corporation of the Commonwealth of Virginia, with its principal place of business located there. In this action, two of the individual defendants, as well as the part-

---

5. The first clause of the Agreement states: "Whereas Sellers own or represent the owners of 400,000 issued and outstanding shares of Common Stock * * *."

nership of Gregory and Sons, are residents of the State of New York, and plaintiff Rogers is a New York resident. If plaintiff's theory were sustained, Virginia Iron would be substituted for Rogers, who plaintiff claims is merely a nominal plaintiff.

Putting aside the fact that by his own complaint plaintiff purports to sue as a representative of the holders of Virginia Iron common stock, the court finds no merit to plaintiff's realignment theory. The Supreme Court, in a line of cases having its roots in Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606 (1905), has taken a position clearly adverse to plaintiff's contention. In the more recent opinion in Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), the Court held that where, in a diversity suit, the corporation's management is *antagonistic* to the institution of suit, the corporation is properly designated as a party defendant. When determining whether the corporation's management is antagonistic, the Court stated (at 96, 77 S.Ct. at 1115):

> "It seems to us that the proper course is not to try out the issues presented by the charges of wrongdoing but to determine the issue of antagonism on the face of the pleadings and by the nature of the controversy."

Paragraph 22 of plaintiff's complaint states unequivocally that the management of Virginia Iron refused to institute this action on behalf of the corporation. In Swanson v. Traer, 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957), the Supreme Court, in holding entrenched management to be antagonistic, noted (at 115, 77 S.Ct. at 1117):

> "The complaint averred a demand on the directors to bring suit, a refusal on their part, and the futility of making any demand on the stockholders."

The instant case falls squarely within the *Traer* ruling, since Paragraph 22 of the complaint states that "further demand would be futile, because all of the present directors have either participated in, ratified, or have known of the within claims but have nevertheless failed to redress them." As the Supreme Court said in Smith v. Sperling, supra, 354 U.S. at 97, 77 S.Ct. at 1115:

> "Whenever the management refuses to take action to undo a business transaction or whenever, as in this case, it so solidly approves it that any demand to rescind would be futile, antagonism is evident. The cause of action, to be sure, is that of the corporation. But the corporation has become through its managers hostile and antagonistic to the enforcement of the claim."

■ There can be no doubt that here the corporation was antagonistic to the institution of suit. Whenever the corporation is antagonistic it must be aligned as a real-party defendant. See Mutual Shares Corp. v. Genesco, Inc., 266 F.Supp. 130, 133 (S.D.N.Y.1967); Haymes v. Columbia Pictures Corp., 16 F.R.D. 118 (S.D.N.Y.1954); Kartub v. Optical Fashions, Inc., 158 F.Supp. 757 (S.D.N.Y.1958).

### B. *Pendent Jurisdiction of State Cause of Action*

In spite of the fact that federal diversity jurisdiction cannot be predicated on the realignment of the corporation as a party defendant, it nevertheless remains to be determined whether the court should retain pendent jurisdiction to render a decision on the one remaining non-federal cause of action.

The Supreme Court, in Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148 (1933), distinguished permissible from non-permissible exercise of federal judicial power over state law claims by contrasting

> "a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal

ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground;* in the latter it may not do so upon the nonfederal *cause of action.*"

(Cited with approval in United Mine Workers of America v. Gibbs, 383 U.S. 715, 722, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

■ Thus, in order for a federal court to retain and dispose of a non-federal cause of action when diversity jurisdiction is not present, the state cause of action must be, in essence, an alternate legal theory premised on the same basic fact situation as a federal cause of action. Even where this is so, the federal cause of action must be *substantial* in nature, and not merely annexed or contrived for the purpose of securing a federal forum.[6] Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); Heit v. Weitzen, 260 F.Supp. 598 (S.D.N.Y.1966); Taussig v. Wellington Fund, Inc., 313 F.2d 472 (3d Cir. 1963); United States for the Use and Benefit of T. Square Equipment Corp. v. Gregor J. Schaefer Sons, Inc., 272 F.Supp. 962 (E.D.N.Y.1967); Olivieri v. Adams, 280 F.Supp. 428 (E.D.Pa. 1968).

The predominant, indeed the sole, issue in this case is that of breach of fiduciary duty by corporate directors.[7] The pleadings and supporting legal memoranda, even at a time prior to the relinquishment of the Section 16(b) cause of action, highlight this predominance. This being so, the observation of the Supreme Court in United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86

S.Ct. 1130, 1139 (1966), is particularly apt:

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."

See also Strachman v. Palmer, 177 F.2d 427, 433, 12 A.L.R.2d 687 (1st Cir. 1949); Walters v. Shari Music Publishing Corp., 193 F.Supp. 307 (S.D.N.Y. 1961).

Plaintiff's prime allegation here is one of mismanagement of corporate affairs by the directors of Virginia Iron.[8] Action constituting mismanagement by corporate fiduciaries has traditionally been defined and interpreted by the state courts.

Under such circumstances as here exist, the application of the following caveat of *Gibbs* is especially appropriate (Id., 383 U.S. at 727, 86 S.Ct. at 1139):

"The question of power will ordinarily be resolved on the pleadings. But the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation. Pretrial procedures or even the trial it-

---

6. An allegation invoking federal jurisdiction is substantial unless it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction * * *." Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). By this test, the allegation does not appear to be substantial.

7. Plaintiff's counsel conceded as much in open court—T.T. p. 27.

8. cf. Chashin v. Mencher, 255 F.Supp. 545 (S.D.N.Y.1965), another stockholders' suit growing out of the sale of the Virginia stock to Bates. There, although plaintiff alleged a cause of action under Section 10(b) of the Securities Act of 1934 and Rule 10b–5 thereunder, Judge Tenney dismissed the complaint for failure to state a claim upon which relief could be granted, observing that "[w]hat plaintiff is really complaining about is the alleged mismanagement of corporate affairs by the directors."

self may reveal a substantial hegemony of state law claims, or likelihood of jury confusion, which could not have been anticipated at the pleading stage. Although it will of course be appropriate to take account in this circumstance of the already completed course of the litigation, dismissal of the state claim might even then be merited. For example, it may appear that the plaintiff was well aware of the nature of his proofs and the relative importance of his claims; recognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed."

As Judge Tenney observed in Cohen v. Colvin, 266 F.Supp. 677, at 686 (S.D. N.Y.1967):

"Since plaintiff's cause of action under federal law is insufficient, plaintiff's cause of action under state law cannot be sustained under the doctrine of pendent jurisdiction."

### THE "LAW OF THE CASE"

Plaintiff's final contention stems from the fact that in Rogers v. Valentine, 37 F.R.D. 231 (S.D.N.Y.1964), Judge Cannella granted summary judgment to defendant Aylward on the Section 16(b) cause of action, but retained the non-federal cause of action under the doctrine of pendent jurisdiction. Plaintiff now claims that under the doctrine of the "law of the case" this court should similarly decide to retain and dispose of the non-federal cause of action under pendent jurisdiction.

■ Mr. Justice Holmes, speaking for the Court in Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912), stated:

" * * * in the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."

While the *Messinger* case involved a former ruling of an Appellate Court in a new appeal in the same case, certainly its rule is applicable to the reconsideration of the order of one district judge by another district judge in the same case. Dictograph Products Co. v. Sonotone Corp., 230 F.2d 131, 135–136 (2d Cir. 1956). This latter case overruled Commercial Union of America v. Anglo-South American Bank, 10 F.2d 937 (2d Cir. 1925), which had stood for the proposition that, in the Second Circuit, a second judge could, under no circumstances, reconsider a ruling of a first judge. See United States v. United States Smelting Ref. & Min. Co., 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950); Banco Nacional de Cuba v. Farr, 383 F.2d 166 (2d Cir. 1967); Bertha Building Corp. v. National Theatres Corp., 269 F.2d 785 (2d Cir. 1959); Ross Products, Inc. v. New York Merchandise Co., 242 F.Supp. 878 (S.D. N.Y.1965). The second judge's discretion in this area is thus firmly established.

■ Since Judge Cannella at the time of his decision did not have the benefit of the knowledge of the later developments in this case, particularly of the abandonment of the Section 16(b) cause of action, a redetermination of the application of pendent jurisdiction is appropriate. LeRoy v. Sabena Belgian World Airlines, 344 F.2d 266 (2d Cir. 1965); and Goldstein v. Doft, 236 F.Supp. 730 (S.D.N.Y.1964).

■ This view of the matter is in accord with the observations set forth in the opinions of Judge Hays and Judge Lumbard in Rosado et al. v. Wyman et al., 414 F.2d 170 (2d Cir. 1969), as to the circumstances under which pendent jurisdiction should be declined by a federal court. Surely if, as in the Rosado case, it was held appropriate that

a federal court should not exercise pendent jurisdiction as to a federal statutory claim, it is proper to decline pendent jurisdiction in the special circumstances of this case, where a bald state claim remains, the first federal claim was abandoned, the second affirmatively waived, and the third contrived after trial and unmeritorious on its face.

For the reasons set forth above, the plaintiff's applications to amend his complaint are denied and the court finds insufficient basis for the application of the doctrine of pendent jurisdiction.

Accordingly, the complaint is dismissed, without prejudice to the renewal of this action in a proper state court.

Pursuant to Rule 52(a), this opinion constitutes the court's findings of fact and conclusions of law.

It is so ordered.