**NEW BANK OF NEW ENGLAND, N.A., Plaintiff,**

v.

**TRITEK COMMUNICATIONS, INC., Cable Management Company, D. Kimbrough King, and Charles A. Smithgall, III, Defendants.**

Civ. A. No. 91–10061–WF.

United States District Court, D. Massachusetts.

April 27, 1992.

**14**

P. Sabin Willett, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

Matthew Hess, White & Case, New York City, for defendants.

## ORDER

WOLF, District Judge.

The defendants in this case have moved for dismissal for lack of subject matter jurisdiction, or in the alternative for transfer. The plaintiff has moved for the substitution of the Federal Deposit Insurance Corporation ("FDIC") as a party. Magistrate Alexander, after thorough review of the jurisdictional issues presented, recommended on December 2, 1991 that the case be dismissed for lack of subject matter jurisdiction. No objections were filed by the plaintiff within the 10 day period. Accordingly, it is hereby ORDERED that:

The defendants' motions to dismiss (# 13, # 15) are hereby ALLOWED. According-

ly, the motion to substitute the FDIC as party is DENIED, and all other motions in this case are moot.

ORDER ON PLAINTIFF'S MOTION TO SUBSTITUTE PARTY (# 33) AND FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTIONS TO DISMISS OR TRANSFER (# 13, # 15)

December 2, 1991

ALEXANDER, United States Magistrate Judge.

These motions to dismiss or transfer have been referred by Order of Reference. All defendants move this Court to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6) for lack of subject-matter jurisdiction or, alternatively, to dismiss or transfer for lack of personal jurisdiction and failure to join necessary and indispensable parties. The Court also faces a motion to substitute a party for the plaintiff, which presents issues that are inextricably interwoven with the motions to dismiss.

### FACTUAL BACKGROUND

The following are the allegations of the plaintiff's First Amended Complaint in summary form. This case arises from a dispute involving a mechanism for guaranteeing a loan. On April 28, 1989, the Bank of New England, N.A. (the "Bank"), executed a revolving credit note to assist the defendants in a cable television venture. The Bank entered a revolving credit and term loan agreement with Tritek–Southern Communications, Ltd., (the "Partnership"), a limited partnership whose general partner is defendant Tritek Communications, Inc. ("Tritek") and whose ownership was distributed as follows: 20% to Tritek; 40% to defendant D. Kimbrough King; and 40% to defendant Charles A. Smithgall, III. The Bank also entered into a "Pledge Agreement" with each of the shareholders of Tritek, which included King and Smithgall. Under the Pledge Agreement, Tritek's shareholders deposited with, and pledged to the Bank, all shares of Tritek as security for the obligations of the Partner-

ship under the Credit Agreement and the note.

On April 28, 1989, King and Smithgall also entered into a "Makewell Agreement" with the Bank, pursuant to which, in the event of the Partnership's bankruptcy, they would incur a joint and several unconditional and irrevocable guaranty of payment of the Partnership's obligations to the Bank in full, capped at $450,000 less advances made. Under a "Collateral Assignment," the partners also assigned to the Bank a security interest in all rights of each partner under the agreement governing the Partnership (the "Partnership Agreement"), including the right of Tritek to manage the Partnership.

Following defaults on the note beginning on June 30, 1990, the Bank accelerated the loan. On January 7, 1991, the Bank and its successor, New Bank of New England, N.A. ("NBNE"), issued a letter ("Demand Letter"), attempting to exert its right under the Pledge Agreement to exercise the voting power of the pledged Tritek shares. The Demand Letter directed Tritek and the shareholders to register the Bank's nominee, BNE Cable Corp. ("BNE Cable"), as the holder of record of the pledged shares and directed the shareholders to take any other actions appropriate to the exercise of the voting rights of the shares by BNE Cable. On January 8, NBNE commenced an earlier version of this action. Later that same month, the shares were registered as requested and NBNE tendered the pledged shares to Tritek, which tendered to BNE Cable a certificate representing all shares of Tritek. BNE Cable delivered a revocable proxy to the shareholders, granting them voting powers.

On January 8, 1991, defendants King and Smithgall formed Cable Management Company ("Cable Management") and, on the next day, amended the Partnership Agreement, substituting Cable Management as the managing general partner of the Partnership. Cable Management then commenced Chapter 11 bankruptcy proceedings in the Northern District of Georgia. On January 18, 1991, the Partnership also commenced a Chapter 11 bankruptcy proceed-

ing in the Northern District of Georgia. Since the filing of this complaint, ill fortune similarly befell NBNE, which was dissolved on July 11 and 12, 1991. The Federal Deposit Insurance Corporation ("FDIC"), NBNE's receiver, moves the Court to substitute it as the sole plaintiff in this action.

NBNE filed this amended complaint on February 8, 1991. Count I seeks several declarations: that BNE Cable is the shareholder of record, possessing the voting power of Tritek's shares and other powers under the Pledge Agreement; that these shares will carry and convey the management power of the general partner of the Partnership; that the substitution of Cable Management for Tritek as general partner of the Partnership was a nullity; and that there was no extinguishment or satisfaction of the underlying debt as a result of NBNE's actions. Count II seeks a judgment holding King and Smithgall liable under the Makewell Agreement for $450,000. Count III seeks damages against King and Smithgall for violation of their contractual obligations under the Pledge Agreement, the Collateral Assignment and the Partnership Agreement, and for breach of implied covenants of good faith under each agreement. Count IV seeks damages against King and Smithgall for breach of fiduciary duties incurred in their capacities as pledgors, directors and officers of Tritek.

## ANALYSIS

The defendants present this Court with a salmagundi of procedural challenges in order to extirpate this case from the Court's docket. The motion to substitute the FDIC for New Bank might be routine, but for the motions to dismiss challenging this Court's subject-matter jurisdiction and enabling the defendants to contend that this Court never had jurisdiction to hear the motion to substitute. The motions to dismiss challenge not only subject-matter jurisdiction, but also raise thorny issues of personal jurisdiction. They, moreover, raise issues of necessary and indispensable parties and present the possibility of transfer as an alternative to dismissal. Because the defendants' first offering proves poisonous to plaintiff's case, this Court need not digest the complex issue of transfer for lack of personal jurisdiction or indispensable parties.

This Court shall dismiss any action for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "[T]he Court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiffs.... Furthermore, the complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief." *Kuney International, S.A. v. DiIanni*, 746 F.Supp. 234, 236 (D.Mass.1990) (citations omitted).

### Subject–Matter Jurisdiction

■ In cases challenging subject-matter jurisdiction, it is a basic postulate that the Court will determine the existence of subject-matter jurisdiction based on the facts that existed at the time of the complaint. *Media Duplication Services, Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1236 (1st Cir.1991) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); *Lugo–Vina v. Pueblo Int'l, Inc.*, 574 F.2d 41, 42 n. 1 (1st Cir. 1978)); *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 111 S.Ct. 858, 860, 112 L.Ed.2d 951, 954 (1991). In this case, complete diversity existed at the time of the filing of the initial complaint, without question. Defendants Cable Management, King and Smithgall, however, contend that the original complaint became moot when the defendants in that action registered the shares of Tritek in the Bank's name.

■ A partial amendment of the complaint that may affect jurisdictional requirements, generally will not operate to nullify diversity jurisdiction, given the rule of looking to the facts at the commencement of the case to determine jurisdiction. *See, e.g., Freeport–McMoRan*, 498 U.S. ——, 111 S.Ct. at 859–60, 112 L.Ed.2d at 953–55 (addition of non-diverse party as assignee of interest of one of two plaintiffs); *Swafford v. Transit Casualty Co.*, 486 F.Supp. 175, 177 (N.D.Ga.1980) (change

in amount in controversy) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 292, 58 S.Ct. 586, 591, 82 L.Ed. 845 (1938)). Where the amended complaint, however, asserts a different action, the amended complaint supersedes the original and should serve as the Court's basis for determining jurisdiction. *Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 508 (5th Cir.1985); *Bullen v. De Bretteville,* 239 F.2d 824, 833 (9th Cir.1956), *cert. denied sub nom. Treasure Co. v. Bullen,* 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957); *see also Cicchetti v. Lucey,* 514 F.2d 362 (1st Cir.1975); (where a plaintiff brought an action challenging the constitutionality of a statute under which the plaintiff's license had been revoked and where the plaintiff's license was subsequently restored, mooting that action, an amended complaint asserting a class action replaces the original complaint and cannot relate back to it); *cf. USM Corp. v. GKN Fasteners, Ltd.,* 578 F.2d 21, 23 (1st Cir.1978) (relation back doctrine does not apply where jurisdiction was lacking in original complaint and application of the doctrine would, thus, enlarge the appellate court's jurisdiction).[1]

In the case *sub judice,* while the First Amended Complaint cites the exhibits in the original complaint, it can in no sense be deemed an extension of that complaint. The requested relief is completely different. The original complaint essentially sought to obtain the shares of Tritek by way of declaratory and injunctive relief and sought damages from Tritek and King, Smithgall and the other Tritek shareholders for breach of the Pledge Agreement and wrongful interference. That complaint was predicated upon the defendants' failure to comply with the Demand Letter, which requested ownership of the shares pursuant to the Pledge Agreement. The First Amended Complaint essentially propounds that, in complying with the Demand Letter, the defendants only gave the Bank a "stripped" version of the rights it was requesting. The shares no longer had any power to govern the partnership. The plaintiff contends that its request in the First Amended Complaint for damages for breach of the Pledge Agreement is the same request it made for damages under the original complaint for violation of this agreement. The contention is tenuous for several reasons.

---

1. The defendants are correct to point out that the jurisdictional determination presented by the facts of this case transcends a mere interpretation of Congress's allocation of jurisdiction to the federal courts under 28 U.S.C. § 1332, but rather must comply with the constitutional constraints of Article III. Where the jurisdictional basis of a claim becomes moot, but the other aspects of the claim remain live, this Court has discretion to dismiss the case. *Travelers Indemnity Co. v. Dingwell,* 884 F.2d 629, 633 n. 5 (1st Cir.1989) (citing *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 & n. 7, 108 S.Ct. 614, 618–19 & n. 7, 98 L.Ed.2d 720 (1988)). Where the finding of mootness goes to the entire controversy, however, jurisdictional allegations, in a complaint that is entirely moot, should not be able to survive, even in the Court's discretion. *See Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505, 515 n. 10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citing *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *SEC v. Medical Comm. for Human Rights,* 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950)). The requirements

under Article III for standing to sue—that plaintiff allege an injury caused by the plaintiff and redressable by the relief sought (*see Allen v. Wright,* 468 U.S. 737, 751–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556, 569–70 (1984), *reh'g denied,* 468 U.S. 1250, 105 S.Ct. 51, 82 L.Ed.2d 942 (1984))—must be met at all stages of the lawsuit. *United States Parole Com. v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479, 491 (1980) (citing Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973)). When a case becomes moot so that there is no longer a case or controversy presenting an injury redressable by the requested relief, the finding of mootness has an Article III component that transcends any congressional power to confer jurisdiction. *See Richardson v. Ramirez,* 418 U.S. 24, 36, 94 S.Ct. 2655, 2662, 41 L.Ed.2d 551, 560–61 (1974); *SEC v. Medical Comm. for Human Rights,* 404 U.S. 403, 406–07, 92 S.Ct. 577, 579–80, 30 L.Ed.2d 560, 563–64 (1972). Thus, the contention that the original complaint became moot in its entirety places this case on a rather different terrain than that upon which the Supreme Court stood in *Freeport–McMoRan,* contrary to the plaintiff's suggestion that *Freeport–McMoRan* disposes of this question.

First, the underlying actions upon which each claim for damages for breach of the Pledge Agreement is grounded are different. The breach in the original complaint pertains to the failure to register the stock, whereas the breach in the First Amended Complaint pertains to the establishment of Cable Management. Thus, in Article III's terminology of standing, each complaint asserts a different injury and seeks different relief. Second, while the request in the original complaint included King and Smithgall, it also included the other defendants; whereas the First Amended Complaint seeks damages from King and Smithgall only, due to their conduct in establishing Cable Management. Finally and ultimately, the First Amended Complaint inadequately refers back to the original complaint for this Court to rely on the original for the establishment of subject-matter jurisdiction. Thus, this Court, in looking to the facts at the commencement of the case to determine the existence of jurisdiction, shall deem the action to have been commenced with the First Amended Complaint.[2]

■■■ To invoke diversity jurisdiction under 28 U.S.C. § 1332, there must be complete diversity, in that all plaintiffs reside in different states than all defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). "To sustain diversity jurisdiction there must exist an 'actual,' ... 'substantial,' ... controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." *Indianapolis v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47, 50 (1941) (citations omitted). Despite the deferential standard of review on motions to dismiss, when the motion challenges the subject-matter jurisdiction of this Court, "the Court has a duty to 'look beyond the pleadings and arrange

the parties according to their sides in the dispute.' " *Landmark Bank v. Machera*, 736 F.Supp. 375, 378 (D.Mass.1990) (quoting *City of Dawson v. Columbia Avenue Saving Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905)); *Niles–Bement–Pond Co. v. Iron Moulders Union*, 254 U.S. 77, 81–82, 41 S.Ct. 39, 41, 65 L.Ed. 145, 148 (1920) (Court must realign the parties so that no two parties with an "identity of interest" are opposed). The First Circuit has opined:

> Once jurisdictional allegations are challenged, the party asserting diversity has the burden of establishing those allegations with competent proof. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Topp v. CompAir Inc.*, 814 F.2d 830, 839 (1st Cir. 1987); *de Walker v. Pueblo Int'l, Inc.*, 569 F.2d 1169, 1172 n. 4 (1st Cir.1978). No presumption of truthfulness attaches to the allegations. *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir.1977).

*Media Duplication Services Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1235–36 (1st Cir.1991). Thus, this Court will conduct its inquiry of the pleading of subject-matter jurisdiction with scrutiny.

■■■ Plaintiff New Bank is a citizen and resident of Massachusetts. Tritek and the other defendants, by contrast are citizens and residents of Georgia. Defendants Cable Management, King and Smithgall would have this Court realign defendant Tritek as a plaintiff, in order to destroy completeness of diversity. Their contention is that, since either the plaintiff New Bank or its nominee BNE Cable is the true owner of Tritek, there is an identity of interests between the plaintiff and Tritek. *Cf. Niles–Bement–Pond Co. v. Iron Moulders' Union*, 254 U.S. 77, 81–82, 41 S.Ct. 39, 41, 65 L.Ed. 145, 148 (1920) ("That there was not and could not be any sub-

---

**2.** This argument is even more compelling in light of the fact that the plaintiff filed its Demand Letter only one day before the commencement of this suit, making it likely that, if the defendants would respond to the plaintiff's demand, such a response would take place after the commencement of the suit, posing, in turn,

the likelihood of alteration of the material facts underlying the dispute. If the plaintiff could not foresee the form of relief that would be necessary to redress its injuries and could not foresee what parties would be appropriate to a suit to obtain relief, perhaps it should have waited.

stantial controversy, any 'collision of interest,' between the petitioner and the Tool Company, is of course obvious from the potential control which the ownership of stock by the former gave it over the latter company."). The plaintiff contends that the legal effect of the registration of the shares is in dispute. Tritek, however, filed no answer to this dispute, effectively adopting the allegations of the plaintiff's complaint.[3] Defendant argues persuasively that, if Tritek had an interest incompatible with that of the plaintiff, it would not have assumed this legal posture.[4] Thus, Tritek should be realigned as a plaintiff, destroying completeness of diversity and warranting dismissal.

### Substitution of the FDIC and Subject–Matter Jurisdiction

■ The plaintiff argues that, if the motion to substitute the FDIC is allowed, this jurisdictional difficulty will disappear in light of 12 U.S.C. § 1819(b)(2)(A), which provides that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." This provision, thus, confers federal question subject-matter jurisdiction under 28 U.S.C. § 1331 on suits where the FDIC is a party. The fact that a case was originally brought by a different party under diversity jurisdiction would not in itself prevent the FDIC from switching the statutory basis of jurisdiction to federal question. *FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 617 (7th Cir.1989), *reh'g denied en banc*, 1989 WL 66504, 1989 U.S.App. LEXIS 14,142 (7th Cir.1989), *cert. denied*,

494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990).

■ The defendants argue, however, that since NBNE did not have subject-matter jurisdiction to bring its First Amended Complaint, this Court does not have subject-matter jurisdiction to hear the motion to substitute the FDIC.[5] In *W.R. Grace*, upon which the plaintiff relies, there was originally diversity jurisdiction. *Id.* Thus, that case provides no support for substituting a party into a case, in order to create federal jurisdiction, when the case does not have federal jurisdiction from the outset. Plaintiff also relies on *Freeport–McMoRan*, in which the Court invoked the rule that jurisdictional challenges are to be tested at the time of an action's commencement. *Freeport–McMoRan*, 498 U.S. at ——, 111 S.Ct. at 860, 112 L.Ed.2d at 954 (citing *Mollan v. Torrance*, 9 Wheat. 537, 6 L.Ed. 154 (1824); *Clarke v. Mathewson*, 12 Pet. 164, 171, 9 L.Ed. 1041 (1838); *Wichita Railroad & Light Co. v. Public Util. Comm'n of Kansas*, 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124 (1922)). That Court employed this rule to hold that, when after commencement of an action satisfying the diversity requirement one of two plaintiffs assigned its interest to a nondiverse party who was added as a plaintiff, the initially established diversity jurisdiction is not destroyed. *Id.* 498 U.S. at ——, 111 S.Ct. at 859–60, 112 L.Ed.2d at 953–55. Because that case had proper jurisdiction from the outset, it lends no support to the plaintiff here.

In deciding whether substitution of a party could create diversity jurisdiction in a suit that lacked diversity jurisdiction, the

---

**3.** Under the rules of civil procedure: "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." Fed.R.Civ.P. 8(d).

**4.** For instance, the Eleventh Circuit has noted that, in a shareholders' derivative suit, it is proper to realign the corporation as a plaintiff, unless "the corporation has been found to be 'actively antagonistic' to the plaintiff's interests." *Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir.1987) (citing *Swanson v. Traer*, 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957); *Reilly*

*Mortgage Group v. Mt. Vernon Savings & Loan*, 568 F.Supp. 1067 (E.D.Va.1983); *Rogers v. Valentine*, 306 F.Supp. 34 (S.D.N.Y.1969), *aff'd*, 426 F.2d 1361 (2d Cir.1970)). Thus, where a shareholder sues on behalf of the corporation, where the corporation's posture is one of inactivity, even if the plaintiff disapproves of that posture, the corporation is properly realigned as a plaintiff. *See id.* (citing *Kartub v. Optical Fashions*, 158 F.Supp. 757, 758–59 (S.D.N.Y.1958)).

**5.** Notably, this Court faces a complaint that invokes diversity jurisdiction and not federal question jurisdiction.

Fifth Circuit declined to allow a retroactive creation of jurisdiction. *Aetna Casualty & Surety Co. v. Hillman*, 796 F.2d 770, 776 (5th Cir.1986) (citing *Field v. Volkswagenwerk AG*, 626 F.2d 293, 304–05 (3d Cir. 1980)). This Court finds that the same rule should govern cases that do not have jurisdiction, in which a party seeks to create federal question jurisdiction by substituting into the case. "Jurisdiction cannot be created retroactively." *Denberg v. United States Railroad Retirement Bd.*, 696 F.2d 1193, 1197 (7th Cir.1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1706–07, 80 L.Ed.2d 180 (1984) (citing *Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 381–82, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1984)). Employing the rule that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed[,]" *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893, 900–01 (1989), *reh'g denied*, 492 U.S. 932, 110 S.Ct. 12, 106 L.Ed.2d 627 (1989) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957)), leads this Court to the First Amended Complaint, which, as noted, is insufficient.

Accordingly, this Court hereby dismisses for lack of diversity jurisdiction. Plaintiff's motion to substitute must be denied, as there was no case for which this Court had jurisdiction for the FDIC to join. The motion to substitute having been denied, plaintiff's arsenal of jurisdictional asseverations is spent, and this Court finds that the case should be dismissed for lack of subject-matter jurisdiction.

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.

The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).